## A01A0539. ADVANCE TECHNOLOGY CONSULTANTS, INC. v. ROADTRAC, LLC.
### (551 SE2d 735)

MILLER, Judge.

The question on appeal is whether a restrictive covenant forbidding a distributor from contacting *any* of his supplier's clients for competitive purposes for two years following the termination of the distributorship agreement is enforceable, where no territory is specified. As the covenant is not limited to those clients actually contacted by the distributor during the tenure of the distributorship agreement, we hold it is not enforceable and therefore reverse the trial court's denial of a motion to dismiss claims arising out of alleged breaches of the restrictive covenant and related restrictive covenants.

This is the second appearance of this case before this court.[1] Advance Technology Consultants (ATC) agreed to distribute Road-Trac's global positioning satellite system (GPS) products in a distrib-

---

[1] *Advance Technology Consultants v. RoadTrac*, 236 Ga. App. 582 (512 SE2d 27) (1999) (considering certain discovery rulings).

utorship agreement, that contained the following three restrictive covenants:

> 7.3 During the term of this Contract and for a period of two years after the date of termination of the Contract, Distributor will not contact, directly or indirectly, any of the Supplier's clients or client contacts (whether developed by Supplier or developed by Distributor) regarding the competitors or similar products and services to Supplier Products, or otherwise circumvent Distributor in the process of Supplier investigation, negotiation or consummation of any transaction relating to the Products. . . . 7.9 Prior to and two (2) years after the termination of this Contract, Distributor shall not pursue the clients of the Supplier in the Territory and in the business markets established during the term of this Contract. ["Territory" is apparently defined as the Communications Industry and the Field Service Industry in the United States.] . . . 11.4 All Products and related client contacts; client lists; monitoring materials; market strategies; pricing and costs information; Supplier's financial data; and all technical information; whether developed by the Distributor or by the Supplier is and shall become the sole and exclusive property of the Supplier for the Supplier'[s] sole and exclusive use and upon termination of this Contract, Distributor shall cease to use such Supplier Items and return all Supplier Items, and copies of such, immediately to Supplier.

Paragraph 11.4 is listed as a restrictive covenant because the prohibition against ATC using "related client contacts" following the termination of the agreement would prevent ATC from contacting those persons.

ATC allegedly became dissatisfied with RoadTrac's product and terminated the agreement. RoadTrac sued ATC, asserting various business torts and a breach of contract claim based in part on ATC's alleged post-termination violation of the restrictive covenants. Arguing the restrictive covenants were unenforceable, ATC moved to dismiss any claims arising out of those covenants. The court denied the motion, reasoning that although such broadly worded covenants would normally be unenforceable, "the restriction of contact with any clients is unimportant because, by definition, any clients of [Road-Trac] are clients with whom [ATC] had contact." The court also explained that the lack of a geographical territorial restriction was not fatal "as it was understood that, as the exclusive sales distributor of [RoadTrac's] products, [ATC] would operate throughout an unlim-

ited territory." We granted ATC's application for an interlocutory appeal.

1. The first step in considering the enforceability of restrictive covenants is to determine the level of scrutiny to be applied.[2] Georgia courts have traditionally divided restrictive covenants into two categories: "covenants ancillary to an employment contract, which receive strict scrutiny and are not blue-penciled, and covenants ancillary to a sale of business, which receive much less scrutiny and may be blue-penciled."[3] Under this traditional analysis, covenants found in distributorship agreements have always been treated like employee covenants ancillary to employment contracts.[4]

In recent years, however, a middle level of scrutiny has emerged for reviewing professional partnership or professional shareholder arrangements.[5] The courts have reasoned that in such agreements the consideration flows equally among the contracting parties, as manifest in the partner or professional shareholder not only restricting himself but also exacting from each of the other contracting parties a like restriction.[6] Also, partners and professional shareholders go into the transaction with bargaining power relatively equal to that of the other parties.

The question in this case is whether, for purposes of determining the degree of scrutiny, we should depart from the traditional analysis treating distributorship agreements like employment agreements and instead treat this particular distributorship agreement more like a professional partnership agreement. Here the agreement is decidedly one-sided in favor of RoadTrac, reflecting that the parties entered into the agreement with disparate bargaining power. First, there are no restrictive covenants limiting RoadTrac's ability to compete with ATC by using other distributors. Second, RoadTrac, as the domestic owner of the GPS technology ATC wanted to distribute, clearly had the strong upper hand in bargaining power, as was manifest in numerous other provisions. The "Obligations" of ATC are set forth in seventeen separately numbered and detailed paragraphs covering three pages, whereas the "Obligations" of RoadTrac are set forth in six paragraphs covering just over one page, with the largest

---

[2] *Physician Specialists in Anesthesia v. MacNeill*, 246 Ga. App. 398, 402 (2) (a) (539 SE2d 216) (2000). See generally *Habif, Arogeti & Wynne, P.C. v. Baggett*, 231 Ga. App. 289-291 (1) (498 SE2d 346) (1998).

[3] (Footnote omitted.) *Baggett*, supra, 231 Ga. App. at 289-290 (1).

[4] *Jenkins v. Jenkins Irrigation*, 244 Ga. 95, 97-98 (2) (259 SE2d 47) (1979); see *T.V. Tempo, Inc. v. T.V. Venture, Inc.*, 244 Ga. 776, 778 (262 SE2d 54) (1979); *Amstell, Inc. v. Bunge Corp.*, 213 Ga. App. 115, 116 (2) (443 SE2d 706) (1994).

[5] *Baggett*, supra, 231 Ga. App. at 290-291 (1).

[6] *Rash v. Toccoa Clinic Med. Assoc.*, 253 Ga. 322, 325 (2) (320 SE2d 170) (1984); see *Baggett*, supra, 231 Ga. App. at 290 (1).

paragraph focusing primarily on *ATC's* advertising duties. ATC agrees to sell RoadTrac products exclusively, whereas RoadTrac expressly reserves the right to contract with additional sales and marketing representatives who can service the same territory. Similarly, ATC, but not RoadTrac, agrees to perform its duties at a high ethical standard, to maintain a half-million dollar general liability insurance policy naming the other party as an additional insured, to protect the confidentiality and exclusivity of the other party's technology and customers, and to not assign or transfer the contract without the other party's consent. Conversely, only RoadTrac is authorized to terminate the contract upon 15 days written notice and to "take any actions it deems necessary against [the other party] for any material breach of this Contract," including but not limited to specific performance and recovery of attorney fees.

We discern no reason to depart from the historical treatment of the restrictive covenants in this distributorship agreement like covenants ancillary to an employment agreement. Thus, we employ the strict scrutiny standard, under which such covenants are enforceable only if strictly limited in time and territorial effect and are otherwise reasonable considering the business interest of the supplier sought to be protected and the effect on the distributor.[7]

2. The restrictive covenants at issue are primarily nonsolicit covenants in that they attempt to preclude ATC from contacting or pursuing RoadTrac's clients.[8] In any case, regardless of whether they are individually or collectively categorized as nonsolicit or noncompete covenants, Georgia law is clear that if one of them is unenforceable, then they are all unenforceable.[9] This is based on the concept that in restrictive covenant cases strictly scrutinized as employment contracts, Georgia does not employ the "blue pencil" doctrine of severability.[10]

We recognize that two recent opinions of this Court in *Wright v. Power Indus. Consultants*[11] and *Wolff v. Protégé Systems*[12] possibly strayed from this doctrine and explicitly or implicitly held that an unenforceable noncompete or nonsolicit covenant in an employment agreement would not necessarily invalidate other noncompete or nonsolicit covenants contained in the same agreement. In *Wright* we struck down a noncompete covenant as overbroad but upheld a non-

---

[7] *Amstell*, supra, 213 Ga. App. at 116 (2); see *Sanford v. RDA Consultants*, 244 Ga. App. 308, 310 (1) (535 SE2d 321) (2000).

[8] See generally *Baggett*, supra, 231 Ga. App. at 295 (2) (c).

[9] See *Ward v. Process Control Corp.*, 247 Ga. 583, 584 (2) (277 SE2d 671) (1981); *Uni-Worth Enterprises v. Wilson*, 244 Ga. 636, 640 (1) (261 SE2d 572) (1979).

[10] *Uni-Worth Enterprises*, supra, 244 Ga. at 640 (1).

[11] 234 Ga. App. 833 (508 SE2d 191) (1998).

[12] 234 Ga. App. 251 (506 SE2d 429) (1998).

solicit covenant in the same agreement.[13] In *Wolff* we held a noncompete covenant was unenforceable but nevertheless went on to consider the merits of the nonsolicit covenant found in the same agreement.[14] As controlling Supreme Court precedent has not changed, and in light of the overwhelming authority on point,[15] we are required to overrule *Wright* and to disapprove *Wolff* to the extent that they hold or imply that an overbroad noncompete or nonsolicit covenant in a contract being strictly scrutinized does not automatically render unenforceable other nonsolicit or noncompete covenants in the same agreement.[16]

3. The nonsolicit covenant found in paragraph 7.3 prohibits ATC, for two years after the termination of the distributorship, from contacting *any* of RoadTrac's clients or client contacts regarding products or services similar to RoadTrac's products. No territory is specified. Georgia law is clear that unless the nonsolicit covenant pertains only to those clients with whom the employee had a business relationship during the term of the agreement, the nonsolicit covenant must contain a territorial restriction. The seminal case in this area, *W. R. Grace & Co. v. Mouyal*,[17] explained that

> a restrictive covenant prohibiting a former employee from rendering services to *any* client of the employer must contain a territorial restriction expressed in geographic terms because that restriction, which does not take into account whether the employee had a business relationship with that client or whether it was the client who solicited the former employee, is otherwise unreasonable and overbroad in its attempt to protect the employer's legitimate interest in keeping the employee from taking advantage of the goodwill generated during his employment with the employer to lure employer customers away.[18]

---

[13] *Wright*, supra, 234 Ga. App. at 834-836 (2).

[14] *Wolff*, supra, 234 Ga. App. at 252-253 (1) (a), (b).

[15] See *Rollins Protective Svcs. Co. v. Palermo*, 249 Ga. 138, 141 (1) (287 SE2d 546) (1982); *Hogan Mgmt. Svcs. v. Martino*, 242 Ga. App. 791, 793 (1) (530 SE2d 508) (2000); *Johnstone v. Tom's Amusement Co.*, 228 Ga. App. 296, 297 (1) (491 SE2d 394) (1997) (physical precedent only); *Sunstates Refrigerated Svcs. v. Griffin*, 215 Ga. App. 61, 63 (2) (449 SE2d 858) (1994); *Windsor-Douglas Assoc. v. Patterson*, 179 Ga. App. 674, 675 (2) (347 SE2d 362) (1986); *Adcock v. Speir Ins. Agency*, 158 Ga. App. 317, 319 (279 SE2d 759) (1981).

[16] Compare *MacNeill*, supra, 246 Ga. App. at 405 (3) (holding that in a "middle scrutiny" case an unenforceable noncompete covenant did not void a nonsolicit covenant in the same agreement). As we do not have a "middle scrutiny" case before us here, we do not address whether *MacNeill* was correctly decided on this point.

[17] 262 Ga. 464 (422 SE2d 529) (1992).

[18] (Emphasis in original.) Id. at 467 (2), n. 3; accord *American Software USA v. Moore*, 264 Ga. 480, 481 (1) (448 SE2d 206) (1994).

Thus, under *Mouyal*, a "prohibition against doing business with *any* of an employer's customers, whether or not a relationship existed between the customer and the former employee, is overbroad" in the absence of a reasonable territorial restriction.[19]

Here ATC, which is in the analogous position of the employee, is prohibited from contacting any of RoadTrac's clients, but no territory is specified. The trial court's rationale that a territorial restriction was not necessary is based on the misapprehension that the agreement makes ATC the exclusive distributor of RoadTrac's products, when in fact RoadTrac expressly reserves the right to contract with additional sales and marketing representatives, even within the same territory. Accordingly, we hold that this nonsolicit covenant is overbroad and unenforceable.

4. As held earlier in Division 2, the conclusion in Division 3 automatically invalidates the other nonsolicit covenants found in paragraphs 7.9 and 11.4 of the same agreement. Even if we considered the merits of these two paragraphs on their own, we note that in neither is the prohibition against contacting or pursuing RoadTrac's clients restricted to efforts competitive with RoadTrac, but each simply prohibits contact for any purpose. As this prohibits ATC from contacting these clients to sell them unrelated products such as soap or banking products, the covenants clearly go beyond what is necessary to protect RoadTrac's business interests.[20] Moreover, the territory specified in paragraph 7.9 refers to "business markets established during the term of this Contract." Even assuming this description was not otherwise impermissibly vague, we hold that because the territory cannot be determined until the contract terminates, this is yet another factor rendering the covenant unenforceable.[21]

The trial court erred in denying ATC's motion to dismiss claims arising out of alleged breaches of the three nonsolicit covenants found in the distributorship agreement.

*Judgment reversed. Blackburn, C. J., Pope, P. J., Andrews, P. J., Johnson, P. J., Smith, P. J., Ruffin, Eldridge, Barnes, Ellington, Phipps and Mikell, JJ., concur.*

---

[19] (Emphasis in original.) *Mouyal*, supra, 262 Ga. at 467 (2), n. 2; accord *Sanford*, supra, 244 Ga. App. at 310 (1). See *Capricorn Systems v. Pednekar*, 248 Ga. App. 424, 427 (2) (b) (546 SE2d 554) (2001).

[20] See *Howard Schultz & Assoc. v. Broniec*, 239 Ga. 181, 184 (2) (236 SE2d 265) (1977) (covenant may not impose "a greater limitation upon the employee than is necessary for the protection of the employer"); accord *Fleury v. AFAB, Inc.*, 205 Ga. App. 642, 643 (423 SE2d 49) (1992).

[21] *AGA, LLC v. Rubin*, 243 Ga. App. 772, 774 (533 SE2d 804) (2000); see *Koger Properties v. Adams-Cates Co.*, 247 Ga. 68 (1) (274 SE2d 329) (1981).

Decided July 2, 2001.

Michael A. Dailey, for appellant.

Arnall, Golden & Gregory, Henry R. Chalmers, Kevin B. Getzendanner, for appellee.