A06A1657, A06A1658. HILB, ROGAL & HAMILTON COMPANY OF ATLANTA, INC. v. HOLLEY; and vice versa.
(644 SE2d 862)

JOHNSON, Presiding Judge.

Hilb, Rogal & Hamilton Company of Atlanta, Inc. ("HRH") sued its former employee, Hugh Holley, for breach of his employment contract, misappropriation of trade secrets, interference with HRH's

---

[18] See id.

business relations with its customers, breach of duty of loyalty and fiduciary duty, and unjust enrichment. Holley moved for summary judgment on all theories of recovery in the complaint. HRH moved for summary judgment on the breach of contract, breach of fiduciary duty and duty of loyalty, and unjust enrichment claims. The trial court granted Holley's motion for summary judgment on claims that he breached the noncompete and nonsolicit covenants of the employment agreement, and denied summary judgment to both parties on all other counts.

In Case No. A06A1657, HRH appeals from the trial court's grant of Holley's motion for summary judgment regarding the enforceability of the restrictive covenants, and from the court's denial of HRH's motion for summary judgment on the unjust enrichment and breach of fiduciary duty and duty of loyalty claims. In Case No. A06A1658, Holley appeals from the trial court's denial of his motion for summary judgment on the remaining counts of HRH's complaint. For the reasons set forth below, we affirm the judgment in Case No. A06A1657. We affirm in part and reverse in part the judgment in Case No. A06A1658.

On appeal from the grant or denial of summary judgment, we review the record de novo, and we view the evidence and the inferences drawn from it in the light most favorable to the nonmoving party.[1] The defendant does not need to affirmatively disprove the plaintiff's case, but may prevail simply by pointing to the lack of sufficient evidence as to any element of the plaintiff's cause of action. If the defendant does so, the plaintiff may not rest on its pleadings, but must point to specific evidence that gives rise to a triable issue of fact.[2]

So viewed, the record shows that Holley owned and operated an insurance agency selling professional liability insurance to architects and engineers from 1979 to 1997. On August 28, 1997, Holley sold his business to HRH and both parties signed an Agreement of Merger contract that contained the following restrictive covenant:

> Shareholder, by signature hereto, covenants that he shall not for a period of five (5) years after the Effective Date, directly or indirectly, except on behalf of Surviving Corporation, its successors and assigns, solicit or accept risk management, insurance or bond business from any of the customers of Merging Entity as of the moment immediately

---

[1] *Betsill v. Scale Systems*, 269 Ga. App. 393, 394 (604 SE2d 265) (2004); see *Harris v. Gilmore*, 265 Ga. App. 841, 842 (2) (595 SE2d 651) (2004).

[2] Id.

preceding the Effective Date. Shareholder, by signature hereto, acknowledges . . . that this covenant is in addition to any covenants which Shareholder may make in any employment or other agreements executed or to be executed with Surviving Corporation.

On the same day, Holley executed a separate "Employment Agreement and Covenant Not To Compete" that contained different restrictive covenants. It provided:

In order to protect the value of Employer's business, Employee covenants and agrees that, in the event of the termination of his employment, whether voluntary or involuntary, he shall not directly or indirectly as an owner, stockholder, director, employee, partner, agent, broker, consultant or other participant during the Restricted Period:

(a) contact or solicit *or accept an entreaty from*, a Known Customer for the purpose of providing Prohibited Services to such Known Customer;

(b) contact or solicit, *or accept an entreaty from*, a Prospective Customer for the purpose of providing Prohibited Services to Prospective Customer; and

(c) engage in the Business in the Restricted Area without the prior written consent of Employer and HRH.

The employment agreement defined the "Business" as the sale of commercial property and casualty coverages or the provision of risk management services to architects and engineers.

The Agreement of Merger contained a condition precedent that the parties execute the Employment Agreement, and the Employment Agreement provided that the parties' obligation to perform was "expressly contingent upon the closing of the Merger Agreement." As part of the Agreement of Merger, Holley received stock in HRH with a value of approximately $500,000.

In the Employment Agreement, HRH agreed to employ Holley for a period of three years, pay him an annual salary of $125,000, and a "bonus equal to 30% of commissions from property and casualty commission growth in excess of . . . $500,000." The Employment Agreement also provided that

[a]s compensation to Employee for these covenants which have been separately bargained for and are an integral part

> of the Merger Agreement (and are distinct from the compensation for services set forth [above]), Employer shall pay Employee . . . a sum equal to 25% of the net property and casualty commissions realized by Employer from the continuing operations

of Holley's former agency and commissions generated by his efforts for the first two years.

Finally, Holley promised that for the 12-month period following his termination of employment with HRH, he would not hire any employees of HRH or "directly or indirectly aid or encourage any of [HRH]'s employees to seek employment with another business in competition with [HRH]."

The record shows that the first employment agreement HRH sent to Holley contained less onerous restrictive covenants and that Holley thought they had reached a final deal at that time. Almost three months later, HRH sent a different employment agreement with much broader restrictive covenants. Holley's attempts to modify the new restrictive covenants drafted by HRH were unsuccessful. He testified that he felt he had "no other option" than to go forward with the HRH deal at that time because he had already announced the sale to the public, informed insurance companies with whom he worked that he was selling to HRH, agreed to lease his old office to a new tenant, and told his employees that only one of them was guaranteed a job with HRH. Holley was especially concerned that if he backed out of the deal the insurance companies "might think that HRH had uncovered some impropriety on [his] part during their due diligence inspection of [his company's] financials that caused it to cancel the deal."

Almost five years later, on February 28, 2003, Holley resigned from HRH and accepted a position with IOA, a competitor of HRH. Holley resolved to leave HRH after HRH told him on February 13, 2003, that it had decided not to focus on his specialty anymore and that "if you don't like it, you can leave."

The record shows that the following occurred *before* Holley resigned: two employees gave him an electronic organizer for Christmas in 2002 that contained his clients' contact information; he advised, as a professional courtesy, an IOA employee in Florida about which insurance companies he should call to obtain a quote for a client;[3] he informed IOA about an independent brokerage firm in Florida it might want to purchase; he consulted with an IOA attorney about the validity of his restrictive covenants; he helped set up a

---

[3] According to Holley, this client was not an HRH account or prospect.

brokerage account for himself with two of HRH's nonexclusive insurance suppliers; and he planned a March 26, 2003 seminar from home using his personal funds.[4]

After his resignation, Holley mailed an announcement of his new employment affiliation to former customers using publicly available lists. Approximately 20 to 25 percent of the clients that Holley serviced while working for HRH ultimately followed him to IOA. The record shows that he also used the electronic organizer to retrieve phone numbers before he erased the data on it at the request of HRH.

HRH sued Holley for breach of the nonsolicit covenant in his employment agreement, breach of the confidentiality provisions in his employment agreement, breach of his agreement not to raid employees, misappropriation of trade secrets, interference with HRH's relations with its customers, breach of Holley's fiduciary duty and duty of loyalty to HRH, and unjust enrichment. Following discovery, Holley moved for summary judgment on all counts in HRH's complaint. HRH filed a cross-motion for summary judgment on its breach of the employment agreement claim, breach of fiduciary duty and breach of loyalty claim, and unjust enrichment claim. The trial court granted Holley's motion with regard to his alleged breach of the noncompete and nonsolicit covenants in his employment agreement and found that summary judgment was inappropriate on all of the remaining counts in HRH's complaint based upon the existence of genuine issues of material fact.

1. HRH contends the trial court erred by granting Holley's motion for summary judgment on its claim that he breached the noncompete and nonsolicit restrictive covenants because the covenants should not have been subjected to strict scrutiny. We disagree.

> In determining the enforceability of restrictive covenants, we first determine what level of scrutiny to apply. There are three levels: strict scrutiny, which applies to employment contracts; middle or lesser scrutiny, which applies to professional partnership agreements; and much less scrutiny, which applies to sale of business agreements.[5]

This Court has consistently held that when parties execute separate contracts for the seller's sale of the business and the seller's subsequent employment and each contract contains different restrictive covenants, the restrictive covenants in the employment contract

---

[4] The record shows that Holley had planned and conducted spring seminars since 1998.

[5] (Footnote omitted.) *New Atlanta Ear, Nose & Throat Assoc. v. Pratt*, 253 Ga. App. 681, 683 (1) (a) (560 SE2d 268) (2002).

are subject to strict scrutiny.[6] We note that any statements to the contrary found in *Annis v. Tomberlin & Shelnutt Assoc.*,[7] are non-binding dicta.

"[I]n restrictive covenant cases strictly scrutinized as employment contracts, Georgia does not employ the 'blue pencil' doctrine of severability."[8] This means "that if one of them is unenforceable, then they are all unenforceable."[9] In this case, the restrictive covenant precluding Holley from "accepting an entreaty" from known or prospective customers is overly broad and unenforceable.[10] As a result, the trial court did not err when it granted summary judgment in Holley's favor on HRH's claim that he violated the noncompete and nonsolicit covenants.

2. Both parties contend the trial court should have granted them summary judgment on HRH's unjust enrichment claim. HRH asserted that Holley should be compelled to return the commissions it paid him as express consideration for the restrictive covenants in the employment agreement. Neither party was entitled to summary judgment on this claim.

HRH points to evidence that Holley received over $350,000 solely as consideration for the restrictive covenants. Holley admits that he received $290,000 in consideration for the restrictive covenants but contends, among other things, that he is entitled to keep the money because HRH received some benefit from the restrictive covenants.

The trial court correctly denied the parties' motions for summary judgment on HRH's unjust enrichment claim.[11]

3. Holley asserts the trial court should have granted summary judgment to him on HRH's claim for tortious interference with HRH's business relationship with its customers. We agree.

> An employee is permitted to solicit his former customers on behalf of a new employer. Fair competition is always legal, and absent a valid noncompete or nonsolicit covenant a former employee may go to customers whom he procured for

---

[6] *Id.*; *Arnall Ins. Agency v. Arnall*, 196 Ga. App. 414, 419 (2) (396 SE2d 257) (1990) (physical precedent only). See also *Russell Daniel Irrigation Co. v. Coram*, 237 Ga. App. 758 (1) (516 SE2d 804) (1999); *Johnstone v. Tom's Amusement Co.*, 228 Ga. App. 296, 297 (1) (491 SE2d 394) (1997); *MacGinnitie v. Hobbs Group*, 420 F3d 1234, 1242 (11th Cir. 2005).

[7] 195 Ga. App. 27, 30 (2) (392 SE2d 717) (1990).

[8] (Footnote omitted.) *Advance Technology Consultants v. RoadTrac*, 250 Ga. App. 317, 320 (2) (551 SE2d 735) (2001).

[9] (Footnote omitted.) *Id.*

[10] *Pregler v. C&Z, Inc.*, 259 Ga. App. 149, 150 (575 SE2d 915) (2003); *MacGinnitie*, supra, 420 F3d at 1241.

[11] *Id.*

the old employer and endeavor [to try] to persuade them to change their trade to his advantage.[12]

As a result, the trial court erred when it denied Holley's motion for summary judgment on the tortious interference with business relations claim.

4. Holley asserts the trial court erred by denying his motion for summary judgment on HRH's misappropriation of trade secrets claim. To recover for misappropriation of trade secrets, HRH must prove that (1) it had a trade secret as defined by OCGA § 10-1-761 (4); and (2) Holley misappropriated that trade secret.[13] The record shows that Holley signed a confidentiality agreement in which he promised to keep customer lists confidential, that he took the electronic organizer containing contact information for actual customers with him when he resigned from HRH, and that he used the organizer to look up phone numbers after his resignation. Tangible customer lists are the property of the employer and may warrant protection as trade secrets.[14] The evidence is sufficient to create a genuine issue of material fact as to whether Holley misappropriated trade secrets.[15]

5. Both parties contend that the trial court erred by denying their motions for summary judgment on HRH's breach of fiduciary duty and breach of duty of loyalty claims. After reviewing the record, we find that a genuine issue of material fact exists as to whether Holley, a vice president of HRH, was an agent owing a fiduciary duty to HRH.[16] We further find that a genuine issue of material fact exists as to whether he breached any such duty by failing to disclose to HRH the opportunity to acquire an independent brokerage firm in Florida and, instead, providing that information to a competitor of HRH.[17] The trial court properly denied the motions for summary judgment on these claims.

6. Holley contends that the trial court should have granted his motion for summary judgment on HRH's claim that he violated his contractual agreement not to "raid" employees because there is no evidence that he engaged in this conduct. We disagree. Holley's

---

[12] (Punctuation and footnotes omitted.) *Tom's Amusement Co. v. Total Vending Svcs.*, 243 Ga. App. 294, 298 (2) (c) (533 SE2d 413) (2000) (physical precedent only). See also *Continental Maritime Svcs. v. Maritime Bureau*, 275 Ga. App. 533, 536 (2) (621 SE2d 775) (2005); *Bacon v. Volvo Svc. Center*, 266 Ga. App. 543, 545-546 (2) (597 SE2d 440) (2004).

[13] *Penalty Kick Mgmt. v. Coca Cola Co.*, 318 F3d 1284, 1290-1291 (11th Cir. 2003).

[14] See *Leo Publications v. Reid*, 265 Ga. 561, 562 (1) (458 SE2d 651) (1995).

[15] See *DeGiorgio v. Megabyte Intl.*, 266 Ga. 539 (1) (468 SE2d 367) (1996).

[16] See *Tronitec, Inc. v. Shealy*, 249 Ga. App. 442, 452 (8) (547 SE2d 749) (2001), overruled on other grounds, *Williams Gen. Corp. v. Stone*, 279 Ga. 428 (614 SE2d 758) (2005).

[17] See *Bob Davidson & Assoc. v. Norm Webster & Assoc.*, 251 Ga. App. 56, 61-63 (3) (553 SE2d 365) (2001).

contract precluded him from directly or indirectly aiding an HRH employee to seek employment with a competitor. Holley acknowledged that when a former co-worker called him and asked him if there were any job openings at IOA, he told her the name of the person she should contact at IOA. As this could be construed as aiding her efforts to seek employment with IOA, the trial court properly concluded that a genuine issue of material fact exists with regard to this claim.

7. The cases, therefore, have the following posture. We affirm the grant of summary judgment to Holley regarding the nonsolicit and noncompete clauses of the agreement. We affirm the denial of summary judgment to both parties on the unjust enrichment and breach of fiduciary duty and duty of loyalty claims. We also affirm the denial of summary judgment to Holley on HRH's claims he misappropriated trade secrets and breached the employment agreement by aiding employees in seeking employment with a competitor. Finally, we reverse the denial of summary judgment to Holley on HRH's claim of tortious interference with HRH's business relations.

*Judgment affirmed in Case No. A06A1657. Judgment affirmed in part and reversed in part in Case No. A06A1658. Miller and Ellington, JJ., concur.*

DECIDED MARCH 28, 2007.

*Fisher & Phillips, Robert P. Foster, Rebecca J. Jakubcin,* for appellant.
*Nelson, Mullins, Riley & Scarborough, Matthew T. Gomes, Weinberg, Wheeler, Hudgins, Gunn & Dial, Stephen W. Mooney,* for appellee.