A08A1871. GLOBAL LINK LOGISTICS, INC. et al. v. BRILES.
(674 SE2d 52)

ANDREWS, Presiding Judge.

After Jim Briles quit an executive position at Global Link Logistics, Inc., and started working for a competitor, he brought this action for injunctive and declaratory relief concerning the restrictive covenants in his employment agreement with Global Link. Briles also sued for defamation. Global Link answered and moved to compel arbitration. The trial court held the covenants unenforceable and sent the rest of the matter to arbitration. On appeal, Global Link argues that the trial court abused its discretion when it held the covenants unenforceable and denied arbitration as to them. We disagree and therefore affirm.

The standard of review from the grant or denial of a motion to compel arbitration is whether the trial court was correct as a matter of law. *Moore & Moore Plumbing v. Tri-South Contractors*, 256 Ga. App. 58, 60-61 (1) (567 SE2d 697) (2002) (grant of motion); *D. S. Ameri Constr. Corp. v. Simpson*, 271 Ga. App. 825, 826 (611 SE2d 103) (2005) (denial of motion). Likewise, "[w]hether [a] restraint imposed by [an] employment contract is reasonable is a question of law for determination by the court, which considers the nature and extent of the trade or business, the situation of the parties, and all the other circumstances." *Habif, Arogeti & Wynne, P.C. v. Baggett*, 231 Ga. App. 289, 292 (2) (498 SE2d 346) (1998).

The record shows that on May 20, 2006, Briles entered into an employment agreement with Global Link's predecessor in interest. At the time of the agreement, Briles did not have any ownership interest in Global Link's predecessor, although he apparently acquired an equity interest in Global Link in one of the transactions surrounding Global Link's purchase of the predecessor. The employment agreement contained a nondisclosure covenant as well as a noncompete and nonsolicitation covenant. The nondisclosure covenant prohibited Briles, without time limitation, from disclosing or using for his own purposes "the information (including lists of customers or potential customers), observations, customer and vendor relationships and data (including trade secrets) obtained by him while employed by the Company." The noncompete covenant prohibited Briles from "engag[ing] (whether as an owner, operator, manager, employee, officer, director, consultant, advisor, representative or otherwise), directly or indirectly, in any Competitive Busi-

ness," for 24 months after his departure, and from soliciting any Global Link customer, present or future supplier, or employee during that time.

The employment agreement's arbitration provision reads in relevant part:

> (a) Each party hereto agrees that arbitration . . . shall be the sole and exclusive method for resolving any claim or dispute . . . arising out of or relating to the rights and obligations of the parties under this Agreement. . . .

> The parties hereto agree that . . . the arbitrators shall apply the substantive law (but not the arbitral law) of the State of Delaware to resolve the dispute. . . .

> *At any time prior to the arbitrators having been selected and accepting the responsibilities of their position, a party requiring a temporary restraining order or a preliminary or temporary injunction may pursue such injunctive relief in court.* The subsequent appointment of the arbitrators shall not deprive the court of the authority to conduct a hearing and issue the injunction. The arbitrators may subsequently cancel or modify the injunction or, after the final hearing, cause the injunction, as issued or modified, to be made permanent.

> (b) Notwithstanding the foregoing, prior to any party hereto instituting any arbitration proceeding . . . , such party first shall submit the Claim to a mediation proceeding . . . governed by the prevailing procedures of the American Arbitration Association. . . . If the parties hereto have not agreed in writing to a resolution of the Claim pursuant to the mediation within 45 days after the commencement thereof, [or] if any party refuses to participate in the mediation process, then the Claim may be submitted to arbitration. . . .

(Emphasis supplied.) The agreement also contained a severability clause to the effect that if any of its provisions was held unenforceable, "such . . . unenforceability shall not affect any other provision of this Agreement or any action in any other jurisdiction."

According to Briles's verified complaint, he left Global Link on September 25, 2007, and began working for a competitor shortly afterward. On December 14, 2007, Global Link filed a complaint for injunctive relief against Briles and another ex-employee in Delaware Chancery Court. On December 18, Briles filed this action. On

December 19, Briles moved for a temporary restraining order (TRO) and Global Link requested mediation. The trial court held an evidentiary hearing on January 17, 2008. On January 28, Global Link voluntarily dismissed its Delaware action. On February 5, the trial court held the restrictive covenants unenforceable and severable, issued a TRO concerning them,[1] and stayed further proceedings pending arbitration of the parties' remaining disputes.

1. Global Link argues that the trial court erred when it held that the restrictive covenants were unenforceable. We disagree.

> Covenants against competition which are contained in employment contracts are considered to be in partial restraint of trade and will be upheld only if they are strictly limited in time and territorial effect, and are otherwise reasonable considering the business interest of the employer sought to be protected and the effect on the employee.

*Orkin Exterminating Co. v. Walker*, 251 Ga. 536, 537 (307 SE2d 914) (1983). Although facts may be necessary "to show that a questionable restriction, though not void on its face, is, in fact, reasonable," a covenant containing sufficiently indefinite restrictions "[can]not be saved by additional facts" and is "void on its face." *Koger Properties v. Adams-Cates Co.*, 247 Ga. 68, 69 (2) (274 SE2d 329) (1981); see also *Uni-Worth Enterprises v. Wilson*, 244 Ga. 636, 640-641 (261 SE2d 572) (1979) (affirming grant of interlocutory injunction when the enforceability of restrictive covenants "was a legal question which could be determined by looking solely to the language of the restrictive covenant").

(a) It is undisputed that Briles did not own an interest in Global Link or its predecessor at the time he executed the employment agreement. This means that the covenants at issue here cannot have the benefit of the lesser scrutiny afforded to those "ancillary to [the] sale of [a] business," and thus cannot be "blue-penciled," or modified, to make them less sweeping or objectionable. See *Baggett*, 231 Ga. App. at 289-290 (1); *Russell Daniel Irrigation Co. v. Coram*, 237 Ga. App. 758, 759-760 (1) (516 SE2d 804) (1999) (even when employee became part owner "as a *result* of the transaction," covenant should receive strict scrutiny because he had "the bargaining power of only a mere employee at the time he *negotiated* the transaction") (emphasis in original).

(b) The nondisclosure covenant bars Briles from using even his

---

[1] The TRO was unnecessary in light of the trial court's ruling that the covenants were unenforceable as a matter of law.

"observations" during his tenure in any future employment and extends for an indefinite period of time. Global Link has not cited any authority upholding such a provision, which is overbroad and unenforceable. See *Nasco, Inc. v. Gimbert*, 239 Ga. 675, 676-677 (3) (238 SE2d 368) (1977) (covenant not to disclose "any information concerning any matters affecting or relating to the business of [the] employer" for two years was unenforceable) (punctuation omitted).

(c) "A non-competition covenant which prohibits an employee from working for a competitor in any capacity, that is, a covenant which fails to specify with particularity the activities which the employee is prohibited from performing, is too broad and indefinite to be enforceable." (Citation omitted.) *Nat. Teen-Ager Co. v. Scarborough*, 254 Ga. 467, 469 (330 SE2d 711) (1985).

The noncompete covenant at issue here bars Briles from "engag[ing] (whether as an owner, operator, manager, employee, officer, director, consultant, advisor, representative *or otherwise*), *directly or indirectly*, in any Competitive Business," and also bars solicitation of all Global Link customers as well as employees. As such, it is unenforceable. See *Coram*, 237 Ga. App. at 761 (2) (a) (covenant restricting former employee from engaging in any directly competitive activity was "unenforceable because it purports to prevent [the employee] from obtaining employment with any competitor in any capacity"); *Ken's Stereo-Video Junction v. Plotner*, 253 Ga. App. 811 (560 SE2d 708) (2002) (no evidentiary hearing on noncompete covenant was required because the covenant, including an 18-month time limit, a 25-mile territorial restriction, and a bar on becoming an officer, director or shareholder of another electronics company, was void on its face); compare *Palmer & Cay of Ga. v. Lockton Cos.*, 280 Ga. 479, 480-481 (1) (629 SE2d 800) (2006) (upholding nonsolicitation covenant that "[did] not broadly prohibit the solicitation of all of [the employer's] customers").

2. Global Link also argues that the trial court's order ignored Georgia's policy of deferring to actions previously filed in other jurisdictions as well as the parties' own forum selection clause and that it undermined state and federal policy favoring arbitration. These contentions have no merit.

The arbitration section of the employment agreement contains a choice-of-law provision, not a forum-selection provision. The parties agreed that substantive Delaware law would apply to the arbitration proceedings, and that "[a]t any time prior to the arbitrators having been selected and accepting the responsibilities of their position, a party requiring a temporary restraining order or a preliminary or temporary injunction may pursue such injunctive relief *in court*." The parties did not specify any forum in which such relief had to be sought, and Global Link dismissed its Delaware action before the

trial court issued its ruling.[2] No contractual provision or legal rule, then, barred Briles from seeking injunctive relief in a Georgia court. See OCGA § 1-3-9 (Georgia courts shall enforce comity to laws of other states "so long as its enforcement is not contrary to the policy or prejudicial to the interests of this state"); *Nasco*, supra, 239 Ga. at 676 (2) (refusing to enforce choice-of-law provision in employment agreement containing restrictive covenants); *Enron Capital &c. Corp. v. Pokalsky*, 227 Ga. App. 727, 730 (3) (490 SE2d 136) (1997) (affirming trial court's refusal to apply Texas law designated in parties' choice-of-law provision to restrictive covenants).

At the time Briles filed his suit, moreover, neither party had requested arbitration, let alone obtained the appointment of an arbitrator sufficient to activate the agreement's bar on further judicial proceedings. Because Briles's action was consistent with the agreement, it was also consistent with federal and state policy favoring arbitration.

*Judgment affirmed. Barnes and Bernes, JJ., concur.*

DECIDED FEBRUARY 18, 2009.

*Holland & Knight, Kelli S. Lott, Harold T. Daniel, Jr., Laurie W. Daniel, Alston & Bird, Thomas C. S. Pryor*, for appellants.

*Berman, Fink & Van Horn, Benjamin I. Fink, Neal F. Weinrich*, for appellee.

---

[2] Incredibly, even as it argued on appeal that the trial court should have deferred to its Delaware action, Global Link opposed Briles's motion to supplement the record to show that it dismissed that action before the trial court's ruling.