A09A0140. WACHOVIA INSURANCE SERVICES, INC.
v. FALLON et al.
(682 SE2d 657)

SMITH, Presiding Judge..

Wachovia Insurance Services, Inc. appeals from the trial court's grant of summary judgment to Stephen Fallon and Fallon Benefits Group, Inc. in a case filed by Wachovia Insurance against the defendants after Fallon left his employment with Wachovia Insurance and began competing against it through Fallon Benefits. Wachovia Insurance asserts that the trial court erred by granting summary judgment in favor of the defendants and by denying its motion for summary judgment in its favor. Because we find no merit in any of Wachovia Insurance's claims, we affirm the trial court's grant of summary judgment to Fallon and Fallon Benefits.

The record shows that Wachovia Insurance purchased Hamilton, Dorsey & Alston Company on May 1, 2001. Fallon was an owner of Hamilton, Dorsey & Alston and he received shares of Wachovia Insurance stock and cash as part of the sale. After the sale, Hamilton, Dorsey & Alston became a division of Wachovia Corporation and its

name was later changed to Wachovia Insurance Services, Inc. After the sale, Fallon continued working for Wachovia Insurance as a senior vice president in the employee benefits area pursuant to a four-year contract.

In September 2004, Wachovia Insurance's president (Stewart McDowell) requested that Fallon sign a written "confidentiality and non-solicitation agreement." This agreement stated that Fallon would accept the status of an at-will employee, and it also included confidentiality and nonsolicitation provisions.

A couple of years later, Wachovia Insurance reduced Fallon's bonus and commission structure, and Fallon decided to resign and form his own business, Fallon Benefits Group, Inc. On April 12, 2007, Fallon met with McDowell and told him that he was resigning. Fallon informed McDowell that he planned to open a competing business, but assured McDowell that he would honor his nonsolicitation agreement. When Fallon subsequently met with his direct supervisor, Gil Benjamin, they decided that Fallon should give 30 days notice and keep coming into the office for the next two weeks.

A few days later, Benjamin called an employee meeting and informed everyone in the department that Fallon was leaving to start his own firm. On April 23, 2007, Fallon sent the following letter to 90 of his business contacts "with the advice and consent" of Benjamin:

> It is with mixed emotions that I announce my departure from Wachovia Insurance Services. I feel blessed to have had the opportunity to work with partners like you to serve our mutual customers. I am also excited about the challenges that lie ahead as I have decided to start my own firm.
>
> We are in the process of transferring management of the Employer Solutions Group at WIS and re-assigning my accounts. We will be in touch very soon to discuss any transitional issues. Thank you for your past support and best of luck in the future.

On April 30, 2007, Fallon "was informed that [his] services were no longer needed." Wachovia Insurance paid Fallon through May 15, 2007. The next day, Fallon Benefits opened for business.

Wachovia Insurance filed suit against Fallon and Fallon Benefits less than two months later and asserted numerous causes of action against them.[1] Both parties moved for summary judgment in their favor. In a two-sentence order, the trial court denied Wachovia

---

[1] Benjamin testified Wachovia Insurance filed this lawsuit, in part, as "a message to others," that "sometimes you have to do something to let others who might be contemplating

Insurance's motion and granted the motion of Fallon and Fallon Benefits.

1. Wachovia Insurance asserts the trial court should have concluded that Fallon breached his written agreement not to solicit clients. Fallon asserts in response that the nonsolicit agreement is overly broad and legally unenforceable.

> The first step in considering the enforceability of restrictive covenants is to determine the level of scrutiny to be applied. Georgia courts have traditionally divided restrictive covenants into two categories: covenants ancillary to an employment contract, which receive strict scrutiny and are not blue-penciled, and covenants ancillary to a sale of [a] business, which receive much less scrutiny and may be blue-penciled.

(Citations, punctuation and footnotes omitted.) *Advance Technology Consultants v. Roadtrac, LLC*, 250 Ga. App. 317, 319 (1) (551 SE2d 735) (2001). Strict scrutiny requires a court to strike down all covenants not to compete or solicit if one covenant is unenforceable. Id. at 320 (2).

Wachovia Insurance asserts that we should blue-pencil Fallon's agreement because it related to the sale of his interest in Hamilton, Dorsey & Alston Company. The record, however, shows that Fallon signed the confidential and nonsolicitation agreement at issue in this case over three years after the sale of Hamilton, Dorsey & Alston Company. We must therefore apply strict scrutiny to the nonsolicitation agreement. See *Global Link Logistics v. Briles*, 296 Ga. App. 175, 177 (1) (a) (674 SE2d 52) (2009).

Next, we must consider whether the covenant at issue imposes "an unreasonable restraint on trade." (Citations and footnote omitted.) *Trujillo v. Great Southern Equip. Sales*, 289 Ga. App. 474, 476 (1) (657 SE2d 581) (2008). "Whether the restraint imposed by the employment contract is reasonable is a question of law for determination by the court." (Citation, punctuation and footnote omitted.) Id. "A three-element test of duration, territorial coverage, and scope of activity has evolved as a helpful tool in examining the reasonableness of the particular factual setting to which it is applied." (Citations, punctuation and footnote omitted.) *Habif, Arogeti & Wynne v. Baggett*, 231 Ga. App. 289, 292 (2) (498 SE2d 346) (1998). The

---

the same thing understand that if you do this, and you try to take business, you're going to be involved in a lawsuit."

covenant at issue here provided:

> While employed by the Company or any of its affiliates and for two years after the termination of the employment of the Employee with the Company or any of its affiliates, the Employee will not, except to the extent necessary to carry out the Employee's duties as an employee of the Company or any of its affiliates, directly or indirectly, on behalf of the Employee or any other person or entity, solicit or divert away, or attempt to solicit or divert away, any Customer (as defined below) of the Company or any of its affiliates for the purpose of selling or providing Competitive Services (as defined below), provided the Company or any of its affiliates is then still engaged in the sale or provision of the Competitive Services. For purposes of this Agreement, the term "Customer" means (i) any individual or entity that has purchased an insurance contract through the Company (ii) with whom or with which the Employee personally had, alone or in conjunction with others, material contact during the two years immediately prior to the termination of the Employee's employment with the Company or any of its affiliates. For purposes of this Agreement, the Employee shall have had material contact with a person or entity if (i) the Employee had business dealings with the person or entity on behalf of the Company or any of its insurance affiliates either directly or indirectly through an insurance agent or broker; (ii) the Employee was responsible for supervising or coordinating the business dealings between the person or entity and the Company or any of its affiliates; or (iii) the Employee obtained trade secrets or Confidential Information about the person or entity as a direct result of the Employee's business involvement with the person or entity on behalf of the Company or any of its affiliates. For purposes of this Agreement, the term "Competitive Services" means the sale or provision of insurance, underwriting services or consulting services or products relating to insurance of the type offered by the Company as of the date hereof or its affiliates.

Fallon asserted below and on appeal that this provision is overly broad because it can be read to preclude Fallon from soliciting clients who had already severed their relationship with Wachovia Insurance. We agree because the agreement defined "Customer" as meaning "any individual or entity that *has purchased* an insurance contract through the Company." (Emphasis supplied.) See *Gill v. Poe*

*& Brown of Ga.*, 241 Ga. App. 580, 583 (2) (524 SE2d 328) (1999) (employer had no legitimate business interest in preventing solicitation of clients who may have severed relationship with employer up to four years before employee's termination). Compare *Palmer & Cay of Ga. v. Lockton Companies*, 280 Ga. 479, 482-483 (3) (629 SE2d 800) (2006) (nonsolicit covenant applied to only existing customers of employer based on use of word "customers" without further definition). The trial court did not err, therefore, by granting summary judgment in favor of Fallon on Wachovia Insurance's breach of contract claim based upon the nonsolicitation agreement.

2. Wachovia Insurance asserts the evidence shows that Fallon breached his agreement not to

> directly or indirectly . . . solicit or induce, or attempt to solicit or induce, any person employed by the Company or any of its affiliates during the two-year period immediately prior to Employee's termination, to terminate his or her relationship with the Company or any of its affiliates and/or to enter into an employment or agency relationship with the Employee or with any other person or entity with whom the Employee is affiliated.

In support of its claim, Wachovia Insurance points to evidence showing that Fallon Benefits Group hired two Wachovia Insurance employees, Stacy McGee and Julie Mitzel. Wachovia Insurance points to no evidence demonstrating that Fallon approached McGee and Mitzel about working for Fallon Benefits. Instead, the undisputed evidence in the record demonstrates that these employees approached Fallon about a job.

We find this evidence insufficient to support Wachovia Insurance's claim for breach of Fallon's covenant not to solicit employees. Fallon did not solicit or induce the employees; instead, they approached him. Cf. *Akron Pest Control v. Radar Exterminating Co.*, 216 Ga. App. 495, 497 (1) (455 SE2d 601) (1995) (no violation of covenant prohibiting solicitation of former employer's clients where defendant did not actively solicit client but merely accepted client's business). The trial court did not err by granting summary judgment in favor of Fallon on this claim.

3. Wachovia Insurance asserts that the evidence shows that Fallon and Fallon Benefits misappropriated trade secrets and confidential information by "taking, downloading, obtaining, and using" (a) a Wachovia Insurance "client list and client contact information from the [Wachovia Insurance] password protected Blackberry client information"; (b) business cards obtained by Wachovia Insurance employees during Wachovia Insurance employment; (c) hard copies

of client brochures taken from a Wachovia Insurance file cabinet; and (d) "electronic data of client brochure and client information taken from [Wachovia Insurance]'s computer and downloaded onto a CD."[2]

To obtain relief under the Georgia Trade Secrets Act, OCGA § 10-1-760 et seq., Wachovia Insurance must demonstrate both that the information in question constitutes a "trade secret" as defined by OCGA § 10-1-761 (4) and that Fallon or Fallon Benefits misappropriated that trade secret. *Hilb, Rogal &c. v. Holley*, 284 Ga. App. 591, 597 (4) (644 SE2d 862) (2007). The Act defines "trade secret" as

> information, without regard to form, including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers *which is not commonly known by or available to the public* **and** which information:
>
> (A) Derives economic value, actual or potential, from *not being generally known to, and not being readily ascertainable by proper means* by, other persons who can obtain economic value from its disclosure or use; *and*
>
> (B) Is the subject of *efforts that are reasonable under the circumstances to maintain its secrecy*.

(Emphasis supplied.) OCGA § 10-1-761 (4).

(a) With regard to Wachovia Insurance's claim that its client lists and client contact information were misappropriated, the record shows that Fallon used a personal Blackberry device and a cellular phone when he worked at Wachovia Insurance. Both of these devices contained customer contact information that Fallon had entered in them during his employment with Wachovia Insurance. Fallon kept using both of these devices after he left Wachovia Insurance and did not delete the client contact information. Fallon denied using his Blackberry to create client contact lists for his new computer at Fallon Benefits after he left Wachovia Insurance. Instead, he manually entered contact information as he obtained it from clients.

---

[2] A close examination of Wachovia Insurance's brief and enumeration of error reveals that it does not assert that it is entitled to breach of contract damages for any alleged violations by Fallon of the nondisclosure provision in his written agreement. See *Global Link Logistics*, supra, 296 Ga. App. at 177-178 (1) (b) (finding nondisclosure covenant overbroad and unenforceable). Instead, Wachovia Insurance raises only a claim that Fallon violated the Georgia Trade Secrets Act. This opinion, therefore, does not address whether the nondisclosure agreement is enforceable.

The record shows that other former Wachovia Insurance employees who came to work for Fallon Benefits downloaded client contact information from their personal Blackberries into their computer at Fallon Benefits. Wachovia Insurance gave employees who used a personal Blackberry a password that was required to unlock the handset and use it. The purpose of the password was to prevent others from using it.

There is no evidence, however, demonstrating that any former Wachovia Insurance employees had a Wachovia Insurance client list that had been downloaded onto their personal Blackberries. Instead, the employees had their own client contact information that was derived from e-mail correspondence with clients or a client business card.

In order to prevail on its claim regarding misappropriation of this client contact information under the Georgia Trade Secrets Act, Wachovia Insurance must show that the client contact information in its former employees' Blackberries was a "list of actual or potential customers or suppliers which is not commonly known by or available to the public." OCGA § 10-1-761 (4). The record shows without dispute that a public website titled "freeERISA.com" contains all of the information about the customers of an employee benefit broker such as Wachovia Insurance, including the name and contact information of the customer's decision-maker. Indeed, a Wachovia Insurance representative (Benjamin) testified that "all of the employee benefits work that Wachovia Insurance Services does in Atlanta" could be obtained from this website. He described it as "a great prospecting tool to go out and find out who might be writing an account."

Based on this undisputed evidence,[3] this portion of Wachovia Insurance's misappropriation claim fails. See *Leo Publications v. Reid*, 265 Ga. 561, 562 (1) (458 SE2d 651) (1995). Our opinion in *Hilb, Rogal & Hamilton*, supra, is distinguishable because in that case, there was no evidence showing that the client contact information was publicly available. 284 Ga. App. at 597 (4).

(b) With regard to Wachovia Insurance's claim that client business cards were misappropriated, the undisputed evidence shows that Fallon threw away all of his customer business cards

---

[3] Without citation to the record, Wachovia Insurance asserts in a reply brief that this website does not contain current information or e-mail contact information. We cannot consider facts asserted in briefs that are not a part of the record before us. "It is an ancient and honored tenet of law that we do not take evidence from the briefs of parties, we do not get evidence from outside the record, and we do not accept assertions of fact or evidence which were not before the trial court." (Citations and punctuation omitted.) *Demetrios v. State*, 246 Ga. App. 506, 510 (3), n. 14 (541 SE2d 83) (2000).

when he cleaned out his office while preparing to leave Wachovia Insurance. While another employee admits taking business cards obtained during her employment with Wachovia Insurance to her subsequent job with Fallon Benefits, there is no evidence in the record showing that this employee used these business cards after leaving Wachovia Insurance or that Fallon was aware that she had taken them.

Even if this evidence somehow shows a "misappropriation" by Fallon or Fallon Benefits within the meaning of OCGA § 10-1-761 (2), it fails for the same reason that Wachovia Insurance's claim in Division 3 (a) fails: the client contact information contained on business cards was "commonly known by or available to the public." OCGA § 10-1-761 (4). See also *Leo*, supra.

(c) Wachovia Insurance's remaining misappropriation claim against Fallon and Fallon Benefits stems from the conduct of a creative services manager, Julie Mitzel. Mitzel testified that after she resigned from Wachovia Insurance, she took with her some brochures that she had designed for clients during her employment with Wachovia Insurance. She kept these brochures in her desk drawer as samples for her portfolio because "[a]s an artist, you keep your work for your portfolio." Mitzel testified that she took the brochures home, where they are stored in her attic along with her other artwork.

Mitzel testified that she also made a CD which contained electronic copies of some of the brochures she created during her employment with Wachovia Insurance "to build like an electronic portfolio." Mitzel admitted that she took this CD to work during her subsequent employment with Fallon Benefits and used it "[t]o look up fonts, colors." She explained that she "could have called the client, but because I had the disk I went ahead and looked to see what their branded images" required. She never downloaded any information on the disc to her computer at Fallon Benefits, and to her knowledge, no one at Fallon Benefits knew she had the disc.

We find this evidence insufficient to create a genuine issue of fact as to whether Fallon or Fallon Benefits misappropriated a trade secret. With regard to the sample client brochures kept in the attic of Mitzel's home, Fallon and Fallon Benefits engaged in no misappropriation within the meaning of OCGA § 10-1-761 (2). With regard to the CD, the record shows that the information stored on it does not qualify as a trade secret because the information was available to the public.

4. Wachovia Insurance asserts that Fallon breached his duty of loyalty and fiduciary duty. In support of this assertion, Wachovia Insurance points to the following alleged conduct by Fallon *during* his employment with Wachovia Insurance: (a) making an appoint-

ment with another Wachovia Insurance employee whom he later hired; (b) scheduling business appointments with clients that he kept *after* leaving Wachovia Insurance; and (c) discussing his plans to go into business for himself during a golf game with a client.

"It is settled law that corporate officers and directors occupy a fiduciary relationship to the corporation and its shareholders, and are held to the standard of utmost good faith and loyalty." *Hilb, Rogal &c. v. Holley*, 295 Ga. App. 54, 57-58 (2) (670 SE2d 874) (2008). As a senior vice president of Wachovia Insurance, Fallon owed such a duty. Id. at 58. While a corporate officer does not breach fiduciary duties by making plans and arrangements to start a competing company while still employed by the corporation, "the officer may not solicit customers for a competing company or otherwise engage in direct competition with the corporation's business" during his employment with the company. (Citations and punctuation omitted; emphasis omitted.) Id.

(a) We find no merit in Wachovia Insurance's claim that Fallon breached his fiduciary duty by making an appointment with and hiring a Wachovia Insurance employee, Stacy McGee. The undisputed evidence in the record shows that Fallon did not make an appointment with the employee until after he had started his own company on May 16, 2007.

(b) We find no merit in Wachovia Insurance's breach of fiduciary duty and loyalty claims regarding Fallon's conduct on the SETA, Cousins, Wells, and Premiere Global accounts before leaving Wachovia Insurance. The undisputed evidence in the record shows that Fallon did not solicit these clients for his own business or otherwise engage in direct competition with Wachovia Insurance during his employment with Wachovia Insurance.[4]

5. In an interrelated enumeration of error, Wachovia Insurance argues that Fallon and Fallon Benefits tortiously interfered with contracts between Wachovia Insurance and its former employees Simpson, McGee and Mitzel, and induced these employees to breach their fiduciary duty, duty of loyalty, and contracts with Wachovia Insurance. Wachovia Insurance points to the following alleged conduct by Fallon to support these claims: "having both McGee and Simpson solicit [its] clients in violation of their own noncompete contracts"; hiring Mitzel to compete and do work for Fallon Benefits while she was still employed by Wachovia Insurance; and hiring McGee to compete while she was still on Wachovia Insurance's payroll.

---

[4] At the time that a SETA representative called Fallon, Wachovia Insurance had already informed him that his services were no longer needed.

(a) In order to establish a cause of action for wrongful interference with contractual relations, Wachovia Insurance was required to establish the existence of a valid contract. *Quality Foods v. Smithberg*, 288 Ga. App. 47, 55 (4) (653 SE2d 486) (2007). Because the record contains no evidence from which we can determine whether Wachovia Insurance had valid noncompete and nondisclose agreements between itself and Simpson, McGee and Mitzel, its claim for inducing them to breach their covenants not to compete fails.

(b) Wachovia Insurance's claim that Fallon and Fallon Benefits induced Wachovia Insurance employees to breach their fiduciary duty and duty of loyalty is waived because it was not raised below. *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002); *Miller v. Kitchens*, 251 Ga. App. 225, 229 (d) (553 SE2d 300) (2001).

6. Wachovia Insurance's claim for unjust enrichment is predicated upon the taking of client contact information in the former employees' Blackberries and Mitzel's conduct in taking client brochures and the CD. Wachovia Insurance cites no legal authority in support of this theory of recovery.

"Unjust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for." (Citations and punctuation omitted.) *Harris Ins. Agency v. Tarene Farms*, 293 Ga. App. 430, 431 (1) (667 SE2d 200) (2008). "[A] claim for unjust enrichment is not a tort, but an alternative theory of recovery if a contract claim fails." (Citations and footnote omitted.) *Tidikis v. Network for Med. &c.*, 274 Ga. App. 807, 811 (2) (619 SE2d 481) (2005). Because Wachovia Insurance asserts unjust enrichment as a separate tort and not an alternative theory of recovery for a failed contract, this claim fails as a matter of law. See id. Compare *McCondichie v. Groover*, 261 Ga. App. 784, 786 (4) (584 SE2d 57) (2003) (plaintiff could recover money deposited under invalid agreement).

7. Wachovia Insurance seeks civil damages for Fallon and Fallon Benefit's alleged "computer theft" in violation of OCGA § 16-9-93. In support of this claim, Wachovia Insurance points to the conduct of former employees who used client contact information on their Blackberries in their subsequent employment with Fallon Benefits and Mitzel's creation and use of the CD in her subsequent employment with Fallon Benefits. Other than a one-sentence allegation in its brief that Fallon and Fallon Benefits violated this Code section, Wachovia Insurance provides no argument or legal authority in support of this claim.

OCGA § 16-9-93 (g) (1) provides that

[a]ny person whose property or person is injured by reason of a violation of any provision of this article may sue therefor and recover for any damages sustained and the costs of suit. Without limiting the generality of the term, "damages" shall include loss of profits and victim expenditure.

OCGA § 16-9-93 (a) provides:

*Computer theft*. Any person who uses a computer or computer network with knowledge that such use is without authority and with the intention of:

(1) Taking or appropriating any property of another, whether or not with the intention of depriving the owner of possession;

(2) Obtaining property by any deceitful means or artful practice; or

(3) Converting property to such person's use in violation of an agreement or other known legal obligation to make a specified application or disposition of such property shall be guilty of the crime of computer theft.

Fallon asserts that the conduct alleged by Wachovia Insurance does not fall within the definition of computer theft because Wachovia Insurance submitted no evidence showing that "a computer or computer network" was used "with knowledge that such use is without authority." We agree. Use of personal Blackberries cannot demonstrate "knowledge that such use is without authority." Additionally, Mitzel's use of her computer during her employment with Wachovia Insurance to create a CD for her electronic portfolio as a graphics artist, standing alone, fails to establish that she did so with "knowledge that such use is without authority." Wachovia Insurance cites no record evidence demonstrating the requisite knowledge, and this court will not cull the record on Wachovia Insurance's behalf. *Allen v. Bergman*, 201 Ga. App. 781, 782 (3) (a) (412 SE2d 549) (1991). Moreover, Wachovia Insurance has also failed to demonstrate that Fallon or Fallon Benefits had the requisite knowledge required by the statute.

8. Wachovia Insurance asserts in its brief that it is entitled to recover for conspiracy based upon "the various acts of tortious conduct set forth above." Based upon Wachovia Insurance's failure to properly support this assertion with citations to the record and legal authority, we cannot consider it and deem it abandoned. See

Court of Appeals Rule 25; *Drake v. Drake*, 279 Ga. App. 576, 578 (2) (632 SE2d 165) (2006).

Based upon the above, we affirm the trial court's order granting summary judgment in favor of Fallon and Fallon Benefits Group.
*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED JULY 14, 2009 —
RECONSIDERATION DENIED JULY 30, 2009.

*Fisher & Phillips, Walter J. Kruger III*, for appellant.
*Munger & Stone, Benjamin A. Stone*, for appellees.