S06A1287. UNIFIED GOVERNMENT OF ATHENS-CLARKE
COUNTY v. McCRARY et al.

(635 SE2d 150)

CARLEY, Justice.

Appellee-plaintiffs are former employees of Appellant-defendant Unified Government of Athens-Clarke County (ACC). They began their careers before the city and county governments consolidated in 1991, and they retired after July 1, 2002. At the time of Appellees' retirement, ACC provided its employees with two options for health insurance coverage. They could choose between a Preferred Provider Organization (PPO) form of managed health care or a Health Management Organization (HMO) plan. The PPO allowed greater freedom of choice, but required the employee to pay a premium for coverage. The HMO option was provided cost-free. While employed, Appellees selected the PPO option and paid the premiums. After they retired, however, they sought to retain their PPO coverage without paying any premiums. ACC agreed to insure Appellees and their dependents cost-free under the HMO plan, but refused to provide them with cost-free PPO coverage. Appellees brought suit, asserting that they were entitled to free PPO coverage as an element of their retirement benefits. After conducting a hearing, the trial court found in Appellees' favor, concluding that they "have a vested right in free health insurance at whatever level they had at the time they retired, [and that] ACC has impaired that right by requiring them to pay for a portion of the PPO program after retirement." Based on that finding, the trial court ordered ACC "to provide [Appellees] PPO coverage at no cost until death." ACC appeals from that order.

"No . . . laws impairing the obligation of contract . . . shall be passed." Ga. Const. of 1983, Art. I, Sec. I, Par. X.

> [I]t [is] the law of this state that a statute or ordinance establishing a retirement plan for government employees becomes a part of an employee's contract of employment if the employee contributes at any time any amount toward the benefits he is to receive, and if the employee performs services while the law is in effect; and that the impairment clause of our constitution ([cits.]) precludes the application of an amendatory statute or ordinance in the calculation of the employee's retirement benefits if the effect of the amendment is to reduce rather than increase the benefits payable. It is not necessary for an application of this rule that the rights of the employee shall have become vested under the terms of the retirement plan while the amendment is in effect. Rather, if the employee performs services during the

effective dates of the legislation, the benefits are constitutionally vested, precluding their legislative repeal as to the employee, regardless of whether or not the employee would be able to retire on any basis under the plan. [Cits.]

*Withers v. Register*, 246 Ga. 158, 159 (1) (269 SE2d 431) (1980). Here, the parties entered into the following stipulation:

[S]ince unification of the governments in Athens-Clarke County, Athens-Clarke County Government has provided all its retirees hired before 1994 with health insurance coverage at no expense to the retiree. The amount of health insurance coverage provided to the retiree was the level of coverage maintained by the retiree upon leaving employment with the City, County or Athens-Clarke County governments, whether it be individual coverage, individual plus one dependent coverage, or family coverage. This health insurance coverage was provided under the authority of the Charter, ordinances and resolutions.

Based on this stipulation, the trial court was authorized to find that, pursuant to ACC's Charter, ordinances and resolutions, Appellees "have a vested right in free health insurance at whatever level they had at the time they retired . . . ."

However, the question remains as to the meaning of "level of coverage" maintained by Appellees at the time of retirement. The trial court concluded that the phrase meant that Appellees were not only entitled to receive the same amount of coverage for medical expenses as was being provided to them at the time they retired, but that they were also entitled to receive that coverage pursuant to the same health-care delivery system. The trial court determined that "since [Appellees] maintained PPO coverage on the date of retirement, they are entitled to receive cost-free PPO coverage after retirement. Requiring [them] to pay a portion of the program constitutes a reduction in their vested rights."

Contrary to the trial court's conclusion, however, the concept of "level of coverage" has never been construed so broadly as to incorporate within its meaning the underlying source of insurance benefits, such as a specified health-care delivery system. Instead, the phrase has always been used in a much narrower sense, so as simply to connote the amount or extent to which an insured is entitled to receive, from some source, the benefits of insurance coverage. See *Coffield v. Allstate Ins. Co.*, 274 Ga. App. 573, 574 (618 SE2d 180) (2005) ("same levels of coverage" for losses resulting from fire and vandalism); *American Home Assurance Co. v. Smith*, 218 Ga. App.

536, 538 (462 SE2d 441) (1995) ("freedom to contract for varying levels of coverage for various risks . . . ."); *Rampell v. Williams*, 217 Ga. App. 292, 294 (2) (457 SE2d 224) (1995) (insured "does not contend that she has been unable to maintain the same level of coverage . . . ."); *Hudson v. Delta Air Lines*, 90 F3d 451, 453 (I) (11th Cir. 1996) (employer informed potential retirees they "would be 'grandfathered' with respect to their current medical benefits, meaning, they would be entitled to the same level of coverage throughout the course of their retirement . . . ."); *Jones v. American General Life & Accident Ins. Co.*, 213 FRD 689, 691 (S.D. Ga. 2002) ("employees who had retired prior to 1992 retained the level of coverage in effect for them in 1992 under the new policy"); *Southern Trust Ins. Co. v. Griner*, 550 FSupp. 39, 40 (S.D. Ga. 1982) (insured demanded insurer "pay him the difference of the two levels of coverage"); *State Farm Fire & Cas. Co. v. Sweat*, 547 FSupp. 233, 235 (N.D. Ga. 1982) (insurer offered insured "four levels of no-fault coverage: the required $5,000, as well as coverage of $10,000, $25,000, or $50,000"). Clearly, "level of coverage" was used in just this limited sense in connection with Appellees' contracts of employment, since the controlling stipulation specifies that

> [t]he *amount of health insurance coverage* provided to the retiree was the *level of coverage* maintained by the retiree upon leaving employment . . . , whether it be individual coverage, individual [coverage] plus one dependent coverage, or family coverage. (Emphasis supplied.)

"[T]he terms and phrases contained in a contract must be given their ordinary meaning. [Cit.]" *Kreimer v. Kreimer*, 274 Ga. 359, 361 (1) (552 SE2d 826) (2001).

> [I]t is equally well settled that no construction is required or even permissible when the language employed by the parties in their contract is plain, unambiguous, and capable of only one reasonable interpretation. In such an instance, the language used must be afforded its literal meaning and plain ordinary words given their usual significance, and this rule applies equally as well to insurance contracts as to any other contract. [Cits.]

*Wolverine Ins. Co. v. Jack Jordan, Inc.*, 213 Ga. 299, 302 (99 SE2d 95) (1957). The trial court failed to apply these cardinal rules and, thus, erroneously misconstrued "level of coverage" as giving Appellees the right to post-retirement coverage pursuant to the PPO form of managed health care. Under the plain and unambiguous language of their contracts of employment, the precise source of Appellees' cost-free medical coverage is not guaranteed. Instead, they are entitled

only to cost-free coverage to the same extent that their medical expenses were covered at the time of their retirement. Cost-free coverage is provided by ACC only pursuant to the HMO option. The freedom of choice may be more limited under that option, but there is no evidence or contention that it results in Appellees receiving less medical services or indemnification for their medical expenses than with PPO coverage. A more limited right to choose where and how to access medical services is not the equivalent of a reduction in the level of coverage provided for medical expenses. Requiring Appellees to elect the HMO option if they wish to receive cost-free coverage does not violate the impairment clause of the Georgia Constitution, since they never had a vested right to maintain in retirement the precise health-care delivery system by which they received their coverage while employed. Therefore, the trial court erred in ordering ACC to provide Appellees lifetime no-cost PPO coverage.

This holding is unaffected by the fact that, in the past, ACC may have provided some of its retirees with cost-free PPO coverage. Even if ACC did so, it was not pursuant to any ordinance or resolution, since the applicable legislation here guaranteed retirees only the limited right to receive the same "level of coverage." Thus, any previous cost-free PPO coverage was "provided separately and distinctly from retirement benefits" and, consequently, is not evidence of any enforceable contractual or other right on the part of Appellees to a post-retirement continuation of such coverage. *Wilson v. City of East Point*, 257 Ga. 426, 427 (360 SE2d 254) (1987).

*Judgment reversed. All the Justices concur.*

DECIDED SEPTEMBER 18, 2006.

*Begnaud & Marshall, Andrew H. Marshall, O'Quinn & Cronin, Michael A. O'Quinn*, for appellant.
*Eberhardt & Hale, M. Eric Eberhardt*, for appellees.