A07A0202. STULTZ et al. v. SAFETY & COMPLIANCE MANAGEMENT, INC.
(648 SE2d 129)

BERNES, Judge.

Safety & Compliance Management, Inc. ("S & C") commenced this action against Angela Burgess for her alleged breach of a

---

noncompetition agreement.[1] The trial court subsequently denied partial summary judgment to Burgess and granted partial summary judgment to S & C on the issue of whether the agreement was legally enforceable. For the reasons discussed below, we conclude that the noncompetition agreement is unreasonable in terms of the scope of the prohibited activity and therefore reverse.

> Summary judgment is proper when the moving party shows that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. We apply a de novo standard of review to an appeal from a grant or denial of summary judgment and construe the evidence most favorably to the nonmovant.

(Footnotes omitted.) *Welch v. Ga. Dept. of Transp.*, 283 Ga. App. 903 (642 SE2d 913) (2007). See *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Viewed in this light, the record reflects that S & C is a Georgia corporation with its principal place of business in Rossville. S & C provides alcohol and drug testing services to various companies and organizations located in multiple states.

In February 2002, S & C hired Burgess to serve as office manager of its Rossville office. Burgess' job title later changed to Vice President of Operations. Her job duties, however, did not substantially change and included providing general customer service, ensuring that specimens were properly retrieved from clients and transported to the testing lab, contacting clients, and performing general office management.

Upon her employment with S & C, Burgess executed a noncompetition agreement. The agreement provided in full:

> This agreement is made this 28th day of February 2002 between Safety and Compliance and Angela Burgess.
>
> I Angela Burgess, will not compete with Safety and Compliance Management in any area of business conducted by Safety and Compliance Management. This includes solicitation of existing accounts, primarily drug and alcohol testing services.

---

[1] S & C's complaint contained other claims against Burgess, as well as claims against another defendant, but these additional claims are not at issue here.

This agreement is in force for a two year period and a fifty (50) mile radius of the [sic] Rossville, Georgia beginning at the termination of employment by either party.

In May 2004, Burgess quit her job with S & C and began working at Rossville Medical Center ("RMC"). RMC is a medical facility that provides a variety of medical services, including occupational medicine, medical physicals, and workers' compensation injury treatment. RMC also offers alcohol and drug testing services. RMC employed Burgess as a medical assistant. Her duties included setting patient appointments; taking patient medical histories; checking vital signs; performing urinalysis testing for glucose, protein, blood, and pH-level monitoring; administering injections; conducting alcohol breath tests; and collecting specimens for drug testing. The parties dispute whether Burgess also solicited S & C clients on behalf of RMC in an effort to have them switch to RMC for their alcohol and drug testing.

S & C thereafter commenced the instant lawsuit, alleging, among other things, that Burgess, through her employment with RMC, was actively competing with S & C in violation of the noncompete agreement. Burgess moved for partial summary judgment on the ground that the noncompetition agreement was unreasonable in terms of scope and territorial coverage, thereby rendering the agreement void as a matter of law. S & C countermoved for partial summary judgment on the same issue. The trial court denied Burgess' motion and granted S & C's motion. Burgess now appeals.

Restrictive covenants that are ancillary to an employment contract are subject to strict scrutiny and will be voided by Georgia courts if they impose an unreasonable restraint on trade. *Allied Informatics v. Yeruva*, 251 Ga. App. 404, 406 (2) (554 SE2d 550) (2001). See Ga. Const. of 1983, Art. III, Sec. VI, Par. V (c); OCGA § 13-8-2 (a) (2).

Whether the restraint imposed by the employment contract is reasonable is a question of law for determination by the court, which considers the nature and extent of the trade or business, the situation of the parties, and all the other circumstances. A three-element test of duration, territorial coverage, and scope of activity has evolved as a helpful tool in examining the reasonableness of the particular factual setting to which it is applied.

(Citations and punctuation omitted.) *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465 (1) (422 SE2d 529) (1992). Because Georgia does not utilize the "blue pencil" doctrine of severability in this context, if any portion of the restrictive covenant is found unreasonable, "the entire

covenant must fall." (Footnote omitted.) *Uni-Worth Enterprises v. Wilson,* 244 Ga. 636, 640 (1) (261 SE2d 572) (1979). See also *Advance Technology Consultants v. RoadTrac,* 250 Ga. App. 317, 320 (2) (551 SE2d 735) (2001) (noting that "in restrictive covenant cases strictly scrutinized as employment contracts, Georgia does not employ the 'blue pencil' doctrine of severability") (footnote omitted).

With these principles in mind, we turn to the present case. Burgess contends that the trial court erred in concluding that the noncompetition agreement was reasonable as to the scope of the activity prohibited.[2] Applying the strict scrutiny standard, we agree with Burgess and conclude that the noncompetition agreement is unreasonable because it is overly broad and indefinite.

The noncompetition agreement provides that Burgess "will not compete . . . in any area of business conducted by [S & C]." Although the next sentence of the agreement provides some particularity by referring to the solicitation of existing accounts, the agreement, when read as a whole, plainly is intended to prevent any type of competing activity whatsoever, with the reference to solicitation merely being illustrative of one type of activity that is prohibited. By using the phrase "[t]his includes" to begin the sentence referring to the solicitation of existing accounts, the contracting parties clearly intended for the reference to solicitation to be illustrative rather than exclusive. See generally *Unified Govt. of Athens-Clarke County v. McCrary,* 280 Ga. 901, 903 (635 SE2d 150) (2006) (noting that "plain ordinary words [should be] given their usual significance" when construing a contract) (citation omitted). Thus, when properly construed, the noncompetition agreement prohibits, without qualification, Burgess from competing in any area of business conducted by S & C.

Such a prohibition clearly is unreasonable under our case law. "A non-competition covenant which prohibits an employee from working for a competitor in any capacity, that is, a covenant which fails to specify with particularity the activities which the employee is prohibited from performing, is too broad and indefinite to be enforceable." (Citation omitted.) *Nat. Teen-Ager Co. v. Scarborough,* 254 Ga. 467, 469 (330 SE2d 711) (1985). See also *Howard Schultz & Assoc. of the Southeast v. Broniec,* 239 Ga. 181, 184-185 (2) (236 SE2d 265) (1977).[3] And, Georgia courts have interpreted contractual language

---

[2] Burgess further contends that the trial court erred in concluding that the territorial coverage of the noncompetition agreement was reasonable. Because we conclude that the agreement is void due to its unreasonable scope, we do not reach the separate issue of territorial coverage.

[3] A noncompetition agreement must balance a former employee's right to earn a livelihood, with an employer's right to protect itself from a former employee's unfair appropriation of

similar to that found in the present case as essentially prohibiting an employee from working for a competitor in any capacity whatsoever. See *Orkin Exterminating Co. v. Walker*, 251 Ga. 536, 539 (2) (c) (307 SE2d 914) (1983) (concluding that covenant providing that former employees "may not engage in the pest control, exterminating, fumigating[,] or termite control business effectively prohibit[ed] them from working for a competitor in any capacity" and therefore was void) (citations and punctuation omitted); *McNease v. Nat. Motor Club of America*, 238 Ga. 53, 56 (2) (231 SE2d 58) (1976) (covenant restricting former employee "from engaging in the motor club or automobile association business without restricting the employee as to the kind and character of activity [of] which he could not engage" was overly broad and unreasonable because it "in effect prohibited [him] from working in any capacity for a competitor," even in positions unrelated to his prior position); *Russell Daniel Irrigation Co. v. Coram*, 237 Ga. App. 758, 760-761 (2) (a) (516 SE2d 804) (1999) (covenant restricting former employee from "engag[ing] in any activity which is directly competitive with any activity engaged in by [former employer]" was "unenforceable because it purports to prevent [the employee] from obtaining employment with any competitor in any capacity" and is too indefinite); *Johnstone v. Tom's Amusement Co.*, 228 Ga. App. 296, 300 (4) (491 SE2d 394) (1997) (covenant restricting former employee from "carrying on or engaging in the amusement game business" implied that employee could not participate in such a business in any capacity, rendering the covenant unreasonable and void) (citation and punctuation omitted); *Fleury v. AFAB, Inc.*, 205 Ga. App. 642, 643 (423 SE2d 49) (1992) (covenant restricting former employee from, among other things, "engaging in . . . any business performed by [his former employer]" was unreasonable in scope because it prohibited the employee from working for a competitor in any capacity) (punctuation omitted). In light of this case law, we conclude that "the [noncompetition agreement] imposes a greater limitation upon [Burgess] than is necessary for the protection of [S & C] and therefore is unenforceable." (Citations and punctuation omitted.) *Fleury*, 205 Ga. App. at 643.

It is true, as S & C maintains, that there are factual circumstances where an otherwise questionable restrictive covenant that

---

unique business information or customer contacts developed while working for the employer. *Augusta Eye Center v. Duplessie*, 234 Ga. App. 226, 228 (506 SE2d 242) (1998). A prohibition upon a former employee from working for a competitor in any capacity tips the scale too far in favor of the employer, whose legitimate business interests can be adequately protected by a contractual provision prohibiting the employee from engaging in those specific activities in which the employee was trained by the employer or performed for the employer, or through a reasonable nonsolicitation provision. See *Hulcher Svcs. v. R. J. Corman R. Co.*, 247 Ga. App. 486, 492 (5) (543 SE2d 461) (2001).

prohibits working for a competitor will be upheld as reasonable. See *Nat. Teen-Ager Co.*, 254 Ga. at 469; *Koger Properties v. Adams-Cates Co.*, 247 Ga. 68, 69 (274 SE2d 329) (1981); *AGA, LLC v. Rubin*, 243 Ga. App. 772, 774 (533 SE2d 804) (2000). More specifically, a suspect restriction upon the scope of activity may nevertheless be upheld when the underlying facts reflect that the contracting party was the very "heart and soul" of the business whose "departure effectively brought the business to a standstill." *Arnall Ins. Agency v. Arnall*, 196 Ga. App. 414, 418 (1) (396 SE2d 257) (1990) (physical precedent only). See *Watson v. Waffle House*, 253 Ga. 671, 673 (2) (324 SE2d 175) (1985); *Allen v. Hub Cap Heaven*, 225 Ga. App. 533, 538 (5) (a) (484 SE2d 259) (1997). Moreover, the "heart and soul" exception is applicable only where the restrictive covenant otherwise applies to "a very restricted territory and for a short period of time." (Citation omitted.) *Russell Daniel Irrigation Co.*, 237 Ga. App. at 761 (2) (a).

S & C, however, has failed to allege or present evidence showing that Burgess was the heart and soul of its alcohol and drug testing business. "Although [Burgess] was a major player in [S & C's] business, [she] was, when all is said and done, an employee. [Her] departure may have hurt [S &C]; but it did not bring the business to a halt. It cannot be said, therefore, that [Burgess] was the heart and soul of the business." (Punctuation omitted.) *Arnall Ins. Agency*, 196 Ga. App. at 418 (1). See also *Russell Daniel Irrigation Co.*, 237 Ga. App. at 761 (2) (a).[4]

For these combined reasons, we conclude that the noncompetition agreement executed by Burgess is unreasonable as to the scope of the activity prohibited and thus is unenforceable as a matter of law. We therefore reverse the trial court's denial of Burgess' motion for partial summary judgment and its grant of S & C's motion for partial summary judgment.

*Judgment reversed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED JUNE 13, 2007 —

---

[4] S & C also relies upon *Nat. Teen-Ager Co.*, 254 Ga. at 469, but that case addressed a restrictive covenant in the different context of a motion to dismiss for failure to state a claim, which cannot be granted "unless under the pleadings, construed in a light most favorable to the plaintiff, plaintiff can establish no set of facts that would entitle it to relief against the defendant." (Citation and punctuation omitted.) *Boynton v. State Farm &c. Ins. Co.*, 207 Ga. App. 756, 758 (3) (429 SE2d 304) (1993). Likewise, S & C's reliance upon *Smith v. HBT, Inc.*, 213 Ga. App. 560 (445 SE2d 315) (1994) is misplaced. In *Smith*, unlike in the instant action, the noncompetition agreement was narrowly tailored in that it only placed limits upon the former employee's ability to use the employer's marketing program and the client list that had been furnished to him. See id. at 562-563 (2).

*Magruder & Sumner, John A. Owens*, for appellants.
*David D. Gottlieb, Christopher A. Townley, Thomas F. Lindsay*, for appellee.