**SECOND DIVISION**
**MILLER, P. J.,**
**REESE and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 10, 2022**

# In the Court of Appeals of Georgia

A21A1420. BURBACH v. MOTORSPORTS OF CONYERS, LLC et al.

REESE, Judge.

Edmund Burbach appeals from the trial court's order granting injunctive relief to Motorsports of Conyers, LLC d/b/a Falcons Fury Harley-Davison ("Falcons Fury H-D") and Motorsports of Durham, LLC d/b/a Raging Bull Harley-Davidson ("Raging Bull H-D") (collectively, "the Appellees"), which enforced restrictive covenants in his two employment agreements. Burbach argues that the trial court erred, inter alia, in applying Florida law to the restrictive covenants, applying collateral estoppel against him, and in granting the Appellees injunctive relief. For the reasons set forth infra, we reverse.

Viewed in the light most favorable to the ruling below, the evidence shows the following.[1] Falcons Fury H-D and Raging Bull H-D are in the business of selling Harley-Davidson motorcycles, parts, and merchandise, in addition to providing repair and other services for new and used Harley-Davidson motorcycles. Falcons Fury H-D is located in Morrow, Georgia and Raging Bull H-D is located in Durham, North Carolina. These two entities, along with four other Harley-Davidson dealerships located in Florida and California, exist under a common ownership.

Falcons Fury H-D hired Burbach as general manager in January 2016. Burbach was promoted in September 2016 to COO over Falcons Fury H-D, Raging Bull H-D, and the other affiliate dealerships. He then executed two employment agreements, one for Falcons Fury H-D and one for Raging Bull H-D. The Appellees alleged in their complaint that Burbach was required to execute these agreements as a condition of his continued employment and to reflect his new management role as COO, even though both agreements refer to him as "General Manager."

Both agreements contained identical restrictive covenants that limited Burbach's ability to solicit employees or customers, and accept alternative

---

[1] See *Srisovana v. Cambodian Buddhist Society*, 269 Ga. App. 600 (604 SE2d 637) (2004).

2

employments, and that addressed his responsibilities regarding confidential information. Specifically, the agreements stated under the provision entitled "Covenant Not to Solicit and Not to Accept Employment with Competitor[ ]" the following:

> General Manager covenants and agrees that during the Employment Period, including any renewal thereof, and for a period of three (3) years from the date of termination of General Manager's employment, as the case may be, General Manager shall not, directly, or indirectly:
> a. solicit or approach any employees or customers of Employer or its affiliates or request any employees or customers of Employer or its affiliates to transfer employment or business from Employment or its affiliates to any other person, firm, partnership, corporation, or other entity.
> b. solicit or approach, or accept, employment from any person, firm, partnership, corporation or other entity who competes with the business of Employer as of such date within 120 miles of Employer and affiliates thereof operate.

> The agreements also stated, in reference to confidential information, that:

> General Manager shall regard and preserve as confidential all Confidential Information pertaining to Employer's business . . . . General Manager shall not, without the prior written consent of Employer, use for his own benefit or purposes, or disclose to others, either during his employment or at any time thereafter, and except as

3

required in connection with his employment with Employer, any Confidential Information connected with the business operations and developments of Employer. General Manager shall not, without such prior written consent, take or retain or copy any Confidential Information of Employer.

The agreements also included choice-of-law clauses that stated the agreements would be "governed by, and construed in accordance with, the laws of the State of Florida applicable to contracts executed in and to be performed in that State."

On December 11, 2019, Burbach's employment terminated with the Appellees, and he subsequently accepted a role at Preston Cycles West, LLC d/b/a Thunder Tower West Harley-Davidson ("Thunder Tower H-D"), which was a competitor of the Appellees and their affiliates.

The Appellees filed suit against Burbach and Thunder Tower H-D seeking, inter alia, temporary and permanent injunctions to enforce the restrictive covenants in Burbach's employment agreements related to soliciting customers and employees, accepting employment, and using confidential information and trade secrets. The Appellees subsequently filed a motion requesting that the trial court grant an expedited temporary interlocutory injunction. Following a hearing on the matter, the trial court granted the Appellees' motion, and Burbach appeals.

4

"A trial court has broad discretion to decide whether to grant or deny a request for an interlocutory injunction. We will not disturb the result reached below unless we find a manifest abuse of discretion, a total lack of evidence to support that ruling, or an erroneous interpretation of the law."[2] With these guiding principles in mind, we now turn to Burbach's claims of error.

1. Burbach argues that the trial court erred in ruling that the Florida choice-of-law provision in the restrictive covenants was enforceable. Specifically, Burbach asserts that because the enforcement of the restrictive covenants in Burbach's employment agreements would contravene Georgia public policy, the trial court erred in applying Florida law. We agree.

As a preliminary matter, "[b]ecause forum selection clauses involve procedural and not substantive rights, we apply Georgia law to determine the enforceability of the [forum-selection] clause here, even though it contains a choice of law provision requiring that the laws of Florida shall govern."[3]

---

[2] *Fortress Investment Group v. Holsinger*, 354 Ga. App. 405, 408 (841 SE2d 55) (2020) (citation and punctuation omitted).

[3] *Carson v. Obor Holding Co.*, 318 Ga. App. 645, 647-648 (734 SE2d 477) (2012) (citation, punctuation, and footnote omitted).

5

Even though forum-selection clauses "are prima facie valid[,]"[4] "[i]f a party can show both that a restrictive covenant violates Georgia public policy and that a court in the selected forum likely would find the restrictive covenant enforceable, a compelling reason exists to avoid the contractual forum selection clause."[5] Concerning the enforceability of restrictive covenants, OCGA § 13-8-54 (b) states that "[i]n any action concerning enforcement of a restrictive covenant, a court shall

[4] *Carson*, 318 Ga. App. at 648.

[5] *Fortress Investment Group*, 354 Ga. App. at 413 (5) (citation and punctuation omitted). The Appellees argue that the trial court was correct in finding that the Georgia Supreme Court's decision in *Auld v. Forbes*, 309 Ga. 893 (848 SE2d 876) (2020) should serve as the framework for analyzing this choice-of-law clause and that *Auld* foreclosed Burbach's argument on this point; we disagree. In *Auld*, the issue before the Georgia Supreme Court was whether Belize law should apply in a wrongful death case when a 14-year-old boy had drowned while on a trip with the Cobb County School District in Belize. *Auld*, 309 Ga. at 893-894. The Supreme Court stated that Georgia courts "will not apply the law of the place where the injury was sustained if it would conflict with Georgia's public policy[,]" and proceeded to analyze whether the out-of-state law was radically dissimilar to anything existing in our system of jurisprudence. *Auld*, 309 Ga. at 896 (2) (b). In relying on *Auld*, the trial court focused its analysis on whether Florida's law regarding restrictive covenants was radically dissimilar to that of Georgia. However, the present case involves a contractual dispute including a mutually negotiated, forum-selection clause, which differs from *Auld*, where the Supreme Court considered "Georgia's public policy concerning wrongful death claims[ ]" in the context of a tort that occurred in another country. *Auld*, 309 Ga. at 896 (2) (b). Moreover, Georgia courts have consistently applied the two-prong analysis discussed in Division 1, when examining forum-selection clauses related to restrictive covenants. See *Holsinger*, 354 Ga. App. at 413 (5).

not enforce a restrictive covenant unless it is in compliance with the provisions of Code Section 13-8-53[,]" which in turn states that contracts restricting competition are enforceable "so long as such restrictions are reasonable in time, geographic area, and scope of prohibited activities[.]"

In the present case, Burbach's employment agreements contained restrictive covenants that stated he could not "solicit or approach, or accept employment from any person, firm, partnership, corporation or other entity who compete[d] with the business of Employer . . . within 120 miles of Employer and affiliates thereof" for three years following the termination of his employment. However, OCGA § 13-8-57 (b) states that restraints against former employees for more than two years in duration are presumptively unreasonable.[6]

Further, while the covenants stated that Burbach could not work for the Appellees' competitors, they did not specify the types of activities that would be prohibited. Although OCGA § 13-8-56 (3) states that "[t]he scope of competition

---

[6] The Appellees correctly note that the trial court's order granted interlocutory relief that remains in effect until further order of the court and did not explicitly enforce the three-year period. However, when analyzing the validity of a forum-selection clause, this Court has looked to the underlying restrictive covenants themselves and whether a court in the chosen forum is likely to enforce them. See *Holsinger*, 354 Ga. App. at 413 (5).

7

restricted is measured by the business of the employer[,]" covenants that do not list specific limits on the type of activity, and effectively bar former employees from working in any capacity for competitors, have been deemed overbroad and unreasonable.[7]

Finally, these restrictive covenants prohibit Burbach from accepting employment within 120 miles of Falcons Fury H-D and Raging Bull H-D, which were located in Georgia and North Carolina respectively, or their affiliates. However, at the hearing, testimony was offered that each Harley-Davidson dealership had an assigned territory which encompassed approximately ten miles. Testimony at the hearing also showed that the covenants' geographic restrictions would reach into approximately eight states, and exclude several competing locations. This Court has found expansive territorial restrictions to be unreasonable.[8] Thus, based on the above,

---

[7] See *Carson*, 318 Ga. App. at 652 (1) (c) ("[T]he clause is overbroad because it effectively bars [the former employee] from working in any capacity for . . . any competitor of [the former employer]."); *Stultz v. Safety & Compliance Mgmt.*, 285 Ga. App. 799, 802 (648 SE2d 129) (2007) ("A non-competition covenant which prohibits an employee from working for a competitor in any capacity, that is, a covenant which fails to specify with particularity the activities which the employee is prohibited from performing, is too broad and indefinite to be enforceable.").

[8] See *Gale Indus. v. O'Hearn*, 257 Ga. App. 220, 223 (2) (570 SE2d 661) (2002) (holding a limitation of 100 miles was unreasonable); *Brunswick Floors v. Guest*, 234 Ga. App. 298, 301 (506 SE2d 670) (1998) (holding a limitation of 80

8

we conclude that the restrictive covenants in Burbach's employment agreements are unreasonable under Georgia law.

We now turn to the second prong of the analysis and consider whether it is likely that these covenants would be enforced by a Florida court.[9] Florida courts will enforce a choice of law provision if there is "a reasonable relationship between the contract and the state whose law is selected and the selected law does not conflict with Florida law or confer an advantage on a non-resident party which a Florida resident does not have."[10] Here, as the evidence shows that the Appellees do business in Florida, and as the choice of law provision calls for the application of Florida law, thereby avoiding any conflicts with Florida public policy, we conclude that a Florida court would honor the forum-selection clause.[11]

---

miles was unreasonable). Although Georgia courts may apply the "blue pencil" doctrine and modify unreasonable restrictive covenants, Georgia courts are not required to do so. OCGA § 13-8-54 (b) ("[T]he court *may* modify the restraint provision[.]") (emphasis supplied); see *Belt Power v. Reed*, 354 Ga. App. 289, 294-295 (2) (b) (840 SE2d 765) (2020) (holding the trial court did not abuse its discretion in declining to apply the "blue pencil" provision in the Restrictive Covenants Act).

[9] See *Carson*, 318 Ga. App. at 653 (2).

[10] Id. (citation and punctuation omitted).

[11] See id.

In terms of the enforceability of the restrictive covenants themselves, Florida law differs from that of Georgia. While Georgia courts may consider the employee's right to earn a living, Florida courts can only consider the legitimate business interests of the party seeking to enforce the covenant and cannot consider the impact on the party against whom is it being enforced.[12] Thus, it is likely that a Florida court will find the covenants enforceable even though they prohibit Burbach from working for a competitor in any capacity.[13] Further, as Appellees note in their brief, Florida

---

[12] Compare OCGA § 13-8-58 (d) ("In determining the reasonableness of a restrictive covenant between an employer and an employee . . . a court may consider the economic hardship imposed upon an employee by enforcement of the covenant[.]"), with Fla. Stat. Ann. § 542.335 (1) (g) (1) ("In determining the enforceability of a restrictive covenant, a court [s]hall not consider any individualized economic or other hardship that might be caused to the person against whom enforcement is sought.").

[13] See *Gold Coast Media v. Meltzer*, 751 S2d 645, 646 (Fla. App. 1999) (upholding a non-compete clause that prevented a former employee from working in any capacity for a business competitor, directly or indirectly, with the former employer anywhere in the United States or Puerto Rico); see also *DePuy Orthopaedics v. Waxman*, 95 S3d 928, 940 (III) (D) (Fla. App. 2012) (noting that claims of harm due to an injunction enforcing a non-compete clause conflicts with the Fla. Stat. Ann. § 542.335 (1) (g) (1)).

courts have found a geographic restriction of 120 miles enforceable, and would be likely to enforce the covenants despite their reach.[14]

Therefore, based on the above, we conclude that a Florida court would apply Florida law in reviewing Burbach's restrictive covenants, and would enforce the covenants even though they are unreasonable under Georgia law. Accordingly, we conclude that the trial court erred in upholding the forum-selection clauses in Burbach's restrictive covenants.[15]

2. Burbach argues that the trial court erred in ruling that Burbach was bound by a previous ruling enforcing an employment agreement between the Appellees and another employee that also contained restrictive covenants. We agree.

"The doctrine of collateral estoppel precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies."[16] However, the restrictive covenants in the prior litigation differ from Burbach's agreements. The covenants at issue in the

---

[14] *Allied Universal Corp. v. Given*, 223 S3d 1040, 1042-1044 (Fla. App. 2017) (upholding 150-mile geographic restriction).

[15] See *Carson*, 318 Ga. App. at 654 (2).

[16] See *Minnifield v. Wells Fargo Bank*, 331 Ga. App. 512, 515 (3) (771 SE2d 188) (2015) (citation and punctuation omitted).

previous litigation stated that Georgia law would apply to the agreement, limited competition to two years following the termination of employment, and actually listed the types of activities that would be prohibited and limited the scope of the restriction to those activities performed within two years prior to termination. As the restrictive covenants in the previous matter differ in significant aspects from the present case, the issues addressed in that litigation are not the same.

Moreover, even though the previous litigation referenced by the Appellees included Burbach's new employer, Thunder Tower H-D, a different employee was involved who was not in privity with Burbach.[17] Thus, for these reasons, the doctrine of collateral estoppel does not apply to the present matter.[18]

3. Burbach argues that the trial court erred in granting the Appellees an interlocutory injunction. As discussed in Division 1, supra, Georgia law, rather than Florida law, should have been used to analyze the validity of Burbach's restrictive covenants when issuing injunctive relief. Additionally, the trial court's analysis of the forum-selection clause should have centered on whether the restrictive covenants

---

[17] Id. at 516 (3) ("Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right[.]").

[18] See id.

12

violated Georgia public policy, and then whether the restrictive covenants would be enforced by Florida courts, rather than whether the laws of Florida and Georgia are radically different. For these reasons, we conclude the trial court's order was based on an erroneous application of the law, and that it abused its discretion in granting the Appellees' motion.[19]

4. In light of our rulings in Divisions 1 through 3, supra, we need not reach the remainder of Burbach's claims of error.

*Judgment reversed. Miller, P. J., and Hodges, J., concur.*

---

[19] See *Atlanta Area Broadcasting v. James Brown Enterprises*, 263 Ga. App. 388, 393 (587 SE2d 853) (2003).